(62 South. 608.)

No. 19,498.

ROUSSEL et al. v. RAILWAYS REALTY
CO. et al.

In re RAILWAYS REALTY CO. et al.

(May 12, 1913.)

*(Syllabus by Editorial Staff.)*

1. COURTS (§ 207*)—SUPREME COURT — JURISDICTION.

The Supreme Court has no original jurisdiction, and may not entertain a suit for an injunction restraining the execution of its judgments.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 613; Dec. Dig. § 207.*]

2. APPEAL AND ERROR (§ 1206*)—JUDGMENT—RESTRAINING EXECUTION—JURISDICTION.

Though a district court may not reopen a controversy settled by a judgment of the Supreme Court, it may take jurisdiction of a controversy not involved in the action in which the judgment was rendered, and arising when execution of the judgment will affect injuriously the rights of one not a party to the action, and it may, at the suit of such person, restrain the execution of the judgment so far as it affects him.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4671, 4690; Dec. Dig. § 1206.*]

3. CONTEMPT (§ 20*)—CRIMINAL CONTEMPT—INTERFERENCE WITH JUDGMENTS.

Though the judgments of the Supreme Court must be obeyed by the parties to the actions in which the judgments were rendered, one not a party may, without being guilty of criminal contempt, sue to restrain the enforcement of a judgment so far as the same affects his rights.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 58–62; Dec. Dig. § 20.*]

4. JUDGMENT (§ 452*)—EQUITABLE RELIEF—INJUNCTION—PERSONS ENTITLED.

Where a petitory action against a railway and light company was dismissed by plaintiffs on the company showing a sale to a realty company, and a petitory action was instituted against the realty company and judgment rendered for plaintiffs, the railway and light company, authorized to expropriate property, and claiming a right to the property in controversy, based on its going into possession of the property with the acquiescence of plaintiffs, could maintain a suit in equity to restrain the enforcement of the judgment so far as it affected its rights, for it could not be ousted, and could only be made to respond in damages.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 791, 792, 856, 857; Dec. Dig. § 452.*]

5. CONTEMPT (§ 61*)—CRIMINAL CONTEMPT—TRIAL.

A rule for contempt for interfering with a judgment of the Supreme Court is in the nature of a criminal prosecution, and the court will not determine the rights of the parties in the main litigation, but will only consider whether the interference was a pretense so as to constitute a trifling with the authority of the Supreme Court.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 188–194, 196; Dec. Dig. § 61.*]

6. JUDGMENT (§ 701*)—PERSONS CONCLUDED—CORPORATIONS—IDENTITY.

Two corporations, having separate charters and different incorporators, are separate corporations and a judgment against one is not binding on the other, especially where, from all that appears, the holders of their stock may not be the same.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1226; Dec. Dig. § 701.*]

Monroe, J., dissenting.

Petitory action by Willis J. Roussel and another against the Railways Realty Company. There was a judgment for plaintiffs, who moved for a rule to show cause why Hugh McCloskey and others should not be punished for contempt for interfering with the execution of the judgment. Rule nisi recalled.

Lyle Saxon and Wm. Winans Wall, both of New Orleans, for plaintiffs in rule. H. C. Cage, of New Orleans, for respondent judge. Dinkelspiel, Hart & Davey, of New Orleans, for respondents Thomas Connell, clerk of the civil district court, and Louis Knop, civil sheriff, parish of Orleans. McCloskey & Benedict, of New Orleans, for respondents Hugh McCloskey, individually and as president of New Orleans Railway & Light Co. Bernard McCloskey, Percy S. Benedict, Wm. C. Dufour, and H. Generes, Dufour, all of New Orleans, in pro. per.

PROVOSTY, J. The plaintiffs in this suit, Willis J. Roussel and Jasmin Feitel, brought a petitory action against the New Orleans Railway & Light Company to recover possession of certain lots of ground, adjoining the summer resort on the shore of Lake Pontchartrain known as "Spanish Fort," which the said company was then establishing. To that suit the company filed a general denial. The case went to trial, and Roussel and Feitel offered in evidence their chain of title. The company then offered in evidence a notarial act of sale, by which it appeared that said lots had been sold by the New Orleans, Spanish Fort & Lake Railroad Company to the Railways Realty Company, the defendant in this suit. Thereupon, without anything further being done in the case the plaintiffs, Roussel and Feitel, filed the following motion:

"On motion of Lyle Saxon and W. W. Wall, attorneys for plaintiff herein, and on suggesting to the court that plaintiff desires to discontinue this suit it is ordered that this suit be and the same is hereby, discontinued at plaintiff's costs."

On the following day the same plaintiffs filed the present suit against the Railways Realty Company, which is a repetition of the discontinued suit against the New Orleans Railway & Light Company, only against a different defendant. The defendant the Railways Realty Company set up its title, and the case was tried on the question of title. It was finally decided in this court in favor of the plaintiffs. The decree of this court, to the effect that the plaintiffs recover the property in dispute, was duly registered in the lower court, and a writ of possession was duly issued. Thereupon the New Orleans Railway & Light Company applied for an injunction by the following petition:

"To the Honorable the Civil District Court for the Parish of Orleans.

"The petition of the New Orleans Railway & Light Company, with respect represents:

"(1) That petitioner is a corporation organized under the laws of this state, with its domicile in the city of New Orleans, herein appearing through Hugh McClosky, its president, hereto duly authorized by a resolution of its board of directors.

"(2) That petitioner is a railway corporation and common carrier, organized under the laws of this state, in such cases made and provided all as will appear from a copy of its charter, hereto annexed as part hereof, and as such is entitled to all the rights, privileges, and immunities granted by law to such corporations.

"(3) That petitioner, by the provisions of its said charter, is empowered to construct, maintain, and operate railways propelled by electricity or other motor powers within the limits of the city of New Orleans, in this state.

"(4) That by Ordinance No. 6,492, N. C. S., there was advertised, on the 11th of April, 1910, and thereafter adjudicated in accordance with law, for the sale of the franchise for 'The right of way and right to construct, maintain, use and operate for a term of fifty years

from the date of the contract a double track street railway with all necessary switches, turnouts, connections, etc., for the proper and convenient operation thereof on Adams avenue from West End boulevard to Esplanade street, and along Esplanade street to Spanish Fort and across Bayou St. John by a suitable bridge; thence along the levee or any street or streets within seven hundred feet of said levee to the intersection of People's avenue and Columbia street, with privilege of running on or across private property whenever the purchaser may deem it desirable,' etc., a copy of which ordinance will be produced on trial hereof.

"(5) That your petitioner was the adjudicatee and purchaser of the said franchise, and by act before Robert Legier, city notary, on the 30th day of July, 1910, your petitioner was confirmed in said right.

"(6) That acting under and by virtue of the provisions of said ordinance, the adjudication by the city comptroller of the city of New Orleans, the confirmation by the city council and the mayor of the city of New Orleans, and by the act before said Robert Legier, notary public hereinabove set out, your petitioner, in accordance with its franchise rights and obligations, did construct, run, and operate a railroad propelled by electric power along Adams avenue to Spanish Fort and at, in, and about Spanish Fort, and which railroad it is still running and operating; and in so doing it did construct its tracks and appurtenances across the following property: Beginning at a point at the intersection of Genois street and Adams avenue diagonally across lots 21, 20 First Lake street, lot 4 and lot 3, and thence towards and out to Lake Pontchartrain.

"(7) That for the purpose of operating its said railroad, and giving the necessary and proper conveniences to the public, your petitioner did construct a depot on the following described property, a portion of lot 3 and lot 2, and did construct approaches to said depot extending in the direction and towards Genois street, on portions of lots 2, 15, 16, and 21.

"(8) That petitioner did construct a passageway from said depot for ingress to and egress from Spanish Fort and Bayou St. John, a navigable stream, bounding said Spanish Fort, on lots 2 and a portion of lot No. 1, all of which will more fully appear from a blueprint hereto annexed and made part hereof, and which said lots and the ownership thereof were the subject of controversy in proceedings previously had herein.

"(9) That at the time your petitioner constructed the said track, appurtenances, and the said depot and approaches, it had acquired permission therefor from the Railways Realty Company, a corporation created under the laws of this state, domiciled and doing business in the city of New Orleans, which company had acquired the aforesaid property from the receiver of the New Orleans, Spanish Fort & Lake Railroad Company, by act before Abraham Goldberg, notary public, on May 24, 1909, duly recorded in the records of the conveyance office of this parish, said receiver acting under and by virtue of an order of this honorable court, dated April 29, 1909.

"(10) That at the time your petitioner entered into the construction of said work, and at all times thereafter, it was in no wise interfered with, and no protest of any kind or character was served upon your petitioner by the defendant hereinafter named, or any one else, but, on the contrary, your petitioner acted and believed that it was constructing its said work upon the property of which the recorded owner had granted the permission as aforesaid. That the construction of the work by your petitioner as aforesaid was open and notorious, was constantly made the subject of comment in the public press, and is a matter of which the courts will take judicial cognizance.

"(11) That within the past 72 hours your petitioner has been advised by the civil sheriff of the parish of Orleans, that he, the said civil sheriff, was the holder of a writ of possession issued in the suit of Willis J. Roussel and Jasmin Feitel v. The Railways Realty Company, under the docket No. 94,954 and style hereinabove set forth, directing the said civil sheriff to place the said Willis J. Roussel and Jasmin Feitel into possession of the property described in the writ of possession of record herein.

"(12) That the said civil sheriff has advised your petitioner of his said intention of executing said writ, and has threatened your petitioner with ejectment, and of his intention and determination thereafter of placing said Willis J. Roussel and Jasmin Feitel in possession of the property covered by the tracks, depots, station house, appurtenances, and approaches occupied by your petitioner in its operation of its line of railroad.

"(13) That under the law your petitioner is entitled to the peaceful possession of said property; that your petitioner is a common carrier possessed with all the powers and rights of eminent domain, and all the powers, privileges, advantages, and responsibilities governing common carriers and public service corporations, and therefore the said civil sheriff of the parish of Orleans is without right to eject your petitioner from the premises, or to deprive your petitioner of the use of its said tracks, depots, station houses, appurtenances, or approaches.

"(14) That your petitioner is operating its said line of railroad in connection with what is known as 'Spanish Fort,' which said Spanish Fort is an amusement park, open at all times to the people of New Orleans without charge, and your petitioner is operating in addition under a franchise from the city of New Orleans, acquired at public competition, and with the right to cross private property whenever it may deem it advisable.

"(15) That under the law the said Willis J. Roussel and Jasmin Feitel cannot, and should not be allowed to, evict your petitioner from the aforesaid property, and must be relegated

to action in damages in such amount as this or any other court of competent jurisdiction may determine; such action in damages, and not a writ of possession, being the sole remedy given by law in the premises.

"(16) That the effect of said writ of possession would be to deprive your petitioner of its vested rights to operate its railroad into its terminus at the said point known as Spanish Fort, would deprive the people of New Orleans of access to a public playground, to the great disadvantage of the said people of the city, and to the great harm and injury of your petitioner, and would operate a dispossession of real property and real rights of which your petitioner has had the real and actual possession more than one year, and of which your petitioner claims the possession and enjoyment, and the issuance of which writ of possession herein operates as a disturbance thereto.

"(17) That whilst the execution of said writ of possession will operate to the irreparable injury of your petitioner in the dispossession of its real right, said Roussel and said Feitel have an ample remedy by way of damages against your petitioner who, under the law, is entitled to the right of possession, therefore entitled to keep the said property.

"(18) Your petitioner specially avers that it has been and is in the actual, physical possession of the aforesaid property, and has been and is actually engaged in the legal operation thereof in the manner and form as aforesaid, as a public service corporation, for the benefit of the public, for a period of over two years, without any protest of any kind whatever from said Willis J. Roussel and said Jasmin Feitel, and with their full knowledge and with their acquiescence.

"(19) Your petitioner further avers that it has attempted to arrive at an amicable settlement with the said Roussel and said Feitel, but they, in the belief that they had a right to dispossess your petitioner, have named a fictitious sum as the value of said property, despite the fact that through the representations of said Roussel and said Feitel the said property has been assessed at the price of $100 per lot, or a total of $1,000.

"(20) That the resort hereby by said Roussel and Feitel to said writ of possession is without legal right in the premises, resorted to to harass your petitioner, has impelled petitioner to employ counsel to vindicate its rights, and it is entitled to recover of said Roussel and Feitel all attorney's fees and other damages which it has sustained, or may sustain, by reason hereof, and for which it reserves its right to claim in reconvention.

"(21) That your petitioner is without remedy in the premises save by application to this honorable court for the issuance of the equitable writ of injunction.

"Wherefore, your petitioner prays, the premises and affidavit considered, that upon petitioner's furnishing bond in an amount and conditioned as the law directs, a writ of injunction do issue herein, directed to Louis Knop, Esq., Civil Sheriff of the Parish of Orleans, and to the said Willis J. Roussel and the said Jasmin Feitel, enjoining, restraining, and prohibiting the said civil sheriff and the said Roussel and said Feitel from entering upon, or interfering with or disturbing, the possession of your petitioner in and to the property hereinbefore described. That the said Louis Knop, civil sheriff, Willis J. Roussel, Jasmin Feitel, and the Railways Realty Company may be cited herein, and after due proceedings had, there be judgment in favor of your petitioner and against the said civil sheriff of the parish of Orleans and said Willis J. Roussel and said Jasmin Feitel, maintaining and perpetuating said injunction, reserving, however, to said Roussel and Feitel whatever rights they may have in the premises, and reserving to your petitioner its right to sue for all damages occasioned by the illegal issuance of the writ of possession herein.

"And for general relief.

"[Signed]          McCloskey & Benedict,
"Dufour & Dufour,
"Attys."

The judge granted the injunction. Whereupon the plaintiffs, Roussel and Feitel, filed in this court the following motion:

"To the Honorable the Supreme Court of Louisiana.

"On motion of Willis J. Roussel and Jasmin Feitel, plaintiffs, through Lyle Saxon and Wm. Winans Wall, their attorneys, and on suggesting to the court:

"That on the 17th day of March, 1913, judgment was rendered herein by this honorable court as follows:

"'For the reasons stated, it is ordered, adjudged, and decreed that our judgment heretofore handed down is canceled, annulled, and reversed.

"'It is now ordered, adjudged, and decreed that the judgment and decree of the Court of Appeal is affirmed.

"'It is further ordered, adjudged, and decreed that defendant pay the costs of this court, Court of Appeal, and of the district court.'

"II.

"That said judgment and decree of this court became final on the 17th day of March, 1913.

"III.

"That the decree of the Court of Appeal is as follows: 'For the reasons assigned, it is therefore ordered that the judgment appealed from be reversed, and it is now ordered plaintiff Willis J. Roussel do have and recover of defendant Railways Realty Company the property in controversy herein, and more particularly described in the petition on file and in the judgment of confirmation rendered in the matter entitled Willis J. Roussel v. John Nixon et al., No. 86,935 of the docket of the

civil district court for the parish of Orleans; defendant and appellee to pay the costs of both courts.'

"IV.

"That the said decree of this honorable court and the decree of the Court of Appeal was presented to Honorable Porter Parker, judge of division D of the civil district court for the parish of Orleans, and registered in the minutes of that division of said court on the 24th day of March, 1913.

"V.

"That on the 17th day of April, 1913, movers obtained a writ of possession, under said decree of this honorable court, ordering the civil sheriff of the parish of Orleans to place petitioner in possession of said property, which movers delivered into the hands of the civil sheriff of the parish of Orleans for execution.

"VI.

"That on April 21, 1913, Hugh McCloskey, Bernard McCloskey, Percy S. Benedict, Wm. C. Dufour, H. Generes Dufour, and the New Orleans Railway & Light Company, on behalf of the New Orleans Railway & Light Company, presented, and caused to be presented, to Honorable Porter Parker, judge of division D of the civil district court for the parish of Orleans, the annexed petition, asking said judge of said division D of said court to issue a writ of injunction, the effect of which would be to impede, interfere with, obstruct, and hinder the execution of the decree of this court.

"VII.

"That it appears from paragraph 9 of said petition for injunction, referred to in the preceding paragraph, which is copied herein, that any possession said New Orleans Railway & Light Company may have had of movers' said property was as a mere licensee of the defendant in this suit, in which said judgment and decree of this court was rendered, to wit:

"'(9) That at the time your petitioner constructed the said track, appurtenances, and the said depot and approaches, it had acquired permission therefor from the Railways Realty Company, a corporation created under the laws of this state, domiciled and doing business in the city of New Orleans, which company had acquired the aforesaid property from the receiver of the New Orleans, Spanish Fort & Lake Railroad Company, by act before Abraham Goldberg, notary public, on May 24, 1909, duly recorded in the records of the conveyance office of this parish, said receiver acting under and by virtue of an order of this honorable court, dated April 29, 1909.'

"VIII.

"That besides the fact that the New Orleans Railway & Light Company took possession of movers' property as a mere licensee of the Railways Realty Company, after notice of this suit had been registered in the mortgage office,

in accordance with law, it is a fact that said New Orleans Railway & Light Company is a corporation having the same officers, directors, and officers as defendant Railways Realty Company (being a mere holding company for said New Orleans Railway & Light Company), and was therefore fully apprised that the suit was pending between movers and the Railways Realty Company at the time it unlawfully entered into possession of movers' property by authority of said Railways Realty Company, and the notice of lis pendens, with the certificate of the recorder of mortgages thereon showing its registry in the mortgage office, is annexed hereto as part hereof.

"IX.

"That prior to the institution of this suit in the civil district court for the parish of Orleans, a petitory action was filed in said civil district court by movers against the New Orleans Railway & Light Company, through error, in which it was averred that the New Orleans Railway & Light Company was then in possession of movers' said property, to which suit said New Orleans Railway & Light Company filed a general denial, as will appear from the petition and answer in suit No. 93,004 of the docket of the civil district court for the parish of Orleans, which are annexed hereto as part hereof, and on the trial of said suit presented, through its attorneys Messrs. Percy S. Benedict and Bernard McCloskey copy of an act of sale before Abraham Goldberg, notary public, May 24, 1909, by which it appeared that said property had been sold by the New Orleans, Spanish Fort & Lake Railroad Company to the Railways Realty Company, defendant in this suit.

"X.

"That upon said representations and disclosures by the attorneys for the said New Orleans Railway & Light Company, the said suit of movers against the New Orleans Railway & Light Company was discontinued, as per motion filed on October 27, 1910, and on the next day, movers filed this suit, and recorded notice thereof in the mortgage office, in accordance with law.

"XI.

"That upon presentation to him of said petition for injunction by said Hugh McCloskey, Bernard McCloskey, Percy S. Benedict, Wm. C. Dufour, H. Generes Dufour, and the New Orleans Railway & Light Company, on behalf of the New Orleans Railway & Light Company, Honorable Porter Parker, judge of division D of said civil district court for the parish of Orleans, ordered a writ of injunction to be issued, restraining the civil sheriff and movers from executing said decree of this court, and that thereafter Thomas Connell, clerk of the civil district court for the parish of Orleans, issued a writ of injunction in accordance with said order, and delivered same to Louis Knop, civil sheriff of the parish of Orleans, for execution.

## "XII.

"That after the receipt by him of said contemptuous and illegal order and writ of injunction, notwithstanding the insistent demand of movers, said Louis Knop, civil sheriff of the parish of Orleans, refused to execute said decree and judgment of this court.

## "XIII.

"That no single fact has occurred since the rendition of said judgment and decree by this court that would in the slightest degree change the position of any of the parties with reference to the subject-matter of said judgment and decree; that said Hugh McCloskey, Bernard McCloskey, Percy S. Benedict, Wm. C. Dufour, H. Generes Dufour, the New Orleans Railway & Light Company, Honorable Porter Parker, judge of division D of the civil district court for the parish of Orleans, Thomas Connell, clerk of the civil district court for the parish of Orleans, and Louis Knop, civil sheriff of the parish of Orleans, by their said acts in impeding, interfering with, obstructing, hindering, and refusing to execute the said judgment and decree of this court were all guilty of contempt, and should be punished therefor, according to law. C. P. art. 131; State v. Herron, 24 La. Ann. 623.

"It is therefore ordered that Hugh McCloskey, Bernard McCloskey, Percy S. Benedict, Wm. C. Dufour, H. Generes Dufour, the New Orleans Railway & Light Company, Honorable Porter Parker, judge of division D of the civil district court for the parish of Orleans, Thomas Connell, clerk of the civil district court for the parish of Orleans, and Louis Knop, civil sheriff of the parish of Orleans, do show cause (if any they have or can) at 11 o'clock a. m., Monday, April 28, 1913, why they should not be punished for contempt for impeding, interfering with, obstructing, hindering, and refusing to execute the said judgment and decree of this court."

The usual rule nisi issued on this motion, and in obedience to it each of the persons named made return, as follows:

"Return of Hugh McCloskey, Individually and as President of the New Orleans Railway & Light Company to the Rule for Contempt.

"And now into this honorable court comes Hugh McCloskey, individually and in his capacity as president of the New Orleans Railway & Light Company, and for answer to the rule issued by this honorable court, on the 22d day of April, 1913, directing your respondent, individually and in his capacity as aforesaid, to show cause why he should not be punished by this honorable court for contempt of its authority and for impeding, interfering with, obstructing, hindering, and refusing to permit the execution of its judgment and decree rendered in this cause, on the 17th of March, 1913, says:

"Your respondent denies that he is in contempt of the authority of this court, or that he has done, or caused or permitted to be done, anything in contempt of this court's authority, or to in any manner impede, interfere with, obstruct, hinder, or prevent the execution of its judgment and decree aforesaid.

"Further answering, your respondent denies that the judgment rendered by this honorable court in this case, on the 17th of March, 1913, affirming the judgment of the honorable the Court of Appeal for the parish of Orleans, in turn reversing the judgment of the honorable civil district court for the parish of Orleans, Porter Parker, judge, was or is a judgment of this court, and in that connection your respondent avers that this honorable court has no original jurisdiction, and that its decree affirming a judgment of a lower court becomes at once the judgment of the lower court, to be executed by that court, and through its officers.

"Further answering, your respondent, waiving all technicalities, to the end that this court may be fully advised of his action in the premises, says: That throughout these proceedings he has acted solely upon the advice of the counsel of record in this case, who are, with him, respondents in rule, to wit, Messrs. Bernard McCloskey, Percy S. Benedict, William C. Dufour, and H. Generes Dufour; that if he has done any act which this court may or shall consider to be in contempt of its authority, or to be or to amount to an impeding, interfering with, obstruction, or hindrance to the execution of its judgment and decree, same results from his having followed the advice of his said counsel in the premises, and that in doing or authorizing said act to be done, he in no wise or manner intended any contempt of the authority of this court or any impeding, interference with, obstruction, or hindrance of the execution of its decree.

"Further answering, your respondent avers that the New Orleans Railway & Light Company is a public service corporation, created by virtue of the laws of this state, enjoying and exercising certain public franchises in the city of New Orleans, parish of Orleans, in this state, and is a separate and distinct corporation from the Railways Realty Company, amongst which right is the privilege and franchise to operate a line of railroad in and through the city of New Orleans, and over its public streets and through property owned by this respondent in connection with, and as appurtenances to, its operation of its said line of railroad, and specifically is the said New Orleans Railway & Light Company granted the authority to operate its said line of railroad and appurtenances on and across private property whenever it may deem it desirable, the whole as will more fully appear by Ordinance No. 6,492, N. C. S., certified copy of which is annexed hereto and made part hereof.

"Further answering, your respondent avers that by and under the authority conferred upon it in the ordinance aforesaid, it did, during the year 1910 and succeeding years, construct, run, and operate a line of railroad propelled by elec-

tric power along Adams avenue to Spanish Fort, and in and about Spanish Fort, and in so doing it did construct its tracks and appurtenances across certain public streets, and across certain private property, including a portion of the property which this court in these proceedings has decreed to belong to and be the property of the said plaintiffs, Roussel and Feitel, and that for the purpose of operating its said railroad and of giving the necessary and proper convenience to the public, your petitioner did construct a depot on a portion of the property, as well as passageways and approaches thereto, affording ingress to and egress from said depot to and from the locality hereinafter referred to as an amusement park.

"Further answering, your respondent avers that that portion of the property in the within decree involved, upon which your respondent has constructed its tracks, depot, and other appurtenances, is more particularly described in the petition for injunction filed in the civil district court for the parish of Orleans, under the No. 94,954 of its docket, entitled, 'Willis J. Roussel et al. v. Railways Realty Company,' to which petition there is annexed a map or blueprint setting forth the same in detail, and which your respondent annexes hereto as part of this return.

"Now your respondent further avers that in order to comply with its franchise, rights, and obligations, and for the purpose of giving to the public the service required by its charter and franchises, it became necessary and most convenient for your respondent to lay its tracks across the property aforesaid, and to construct thereon the improvements and appurtenances as averred.

"Respondent avers that it is a public service corporation, and would have had the right in any event, had it been met by adverse possession, to have expropriated the very locus in question, by virtue of its powers of expropriation and of eminent domain given to it, as such public service corporation, by Act No. 80 of the Session of Acts of the Year 1908, and the law of the state as previously announced by this honorable court in the case of Shreveport Traction Co. v. K. C. & G. R. R., 119 La. 759, 44 South. 457.

"Further answering, respondent avers that when it was about to construct its tracks, and other railroad appurtenances above referred to, upon and across the said property, it sought and obtained permission of and from the Railways Realty Company, the then recorded owner of said property, upon the public records, which your respondent in good faith believed to be the owner of said property, the said Railways Realty Company having acquired said property under a warranty deed from the receiver of the New Orleans, Spanish Fort & Lake Railroad Company, the latter being authorized and empowered in the premises under and by virtue of a decree of the honorable civil district court for the parish of Orleans, division E, Hon. George H. Théard, judge, rendered in the matter of said receivership on the 29th day of April, 1909, said date being 11 months before the said Roussel and Feitel sued to be recognized and to be decreed the owners of said property.

"Further answering, your respondent avers that the decree rendered in this cause but recognizes the ownership of and title to said property to be in the plaintiffs, Roussel and Feitel, and that no superior sanctity attaches to a judicial recognition of title; that the possessor of such title, although judicially recognized, has no greater right in or to the property than any other lawful owner or holder of a fee-simple title to real estate.

"Further answering, your respondent admits, as averred in the rule, that prior to the institution of this suit in the civil district court for the parish of Orleans, against the Railways Realty Company, a previous suit was filed in said civil district court by the said Roussel and Feitel against respondent the New Orleans Railway & Light Company, in which said plaintiffs likewise claimed the ownership of said property, averring that your respondent the said New Orleans Railway & Light Company was even then in possession thereof; that respondent the New Orleans Railway & Light Company did, as averred, file a general denial to said petition, and avers that on the 27th of October, 1910, said Roussel and Feitel did in open court dismiss said proceedings without the reservation of any rights whatsoever against your respondent the said New Orleans Railway & Light Company; that thereafter the said plaintiffs did institute the present suit against the Railways Realty Company as defendant, without impleading the New Orleans Railways & Light Company, and without in any way making it a party to the said proceedings, although it was well known to the said Roussel and the said Feitel, and to the public generally, that respondent the New Orleans Railway & Light Company had obtained the franchise aforesaid, and was making improvements in and around Spanish Fort to operate its line of railroad and appliances in connection with the said Railways Realty Company as a summer resort, playground for children, and park for the people of the city of New Orleans, and for their amusement, comfort, health, and pleasure.

"Further answering, your respondent avers that as a railroad or public service corporation, possessed of the powers of eminent domain and expropriation, it constructed the tracks and railroad appurtenances above referred to; that the public at large has an interest superior to that of any individual in the continued operation of said railroad facilities, and that the law fully recognizes the superior right in the public by refusing to permit or allow any private owner of real estate to interfere with the operation of railroad tracks and railroad facilities, which may have been constructed on or across his property, but that the law relegates the said owner, for relief against such entry or encroachment by said public service corporation,

to an action in damages for such injury as he may have suffered or sustained in consequence of such entry for public purposes as aforesaid, by any railroad or other public service corporation.

"Further answering, respondent avers that he was advised by his attorneys, above referred to, that this honorable court had, in the decision hereinafter referred to, announced the law to be as hereinabove set forth, and therefore they advised your respondent that it was not necessary that the said New Orleans Railway & Light Company should resort to expropriation proceedings, for the reason that the public works had already been constructed, and were in operation and use and enjoyment by the public, and that therefore the public rights could not be interfered with at the suit of a private individual, notwithstanding the decree rendered by this honorable court, recognizing his title to said property, but that the said owner was fully protected by and under the law of this state, which conferred upon him a right of action for damages as the consequence of the said taking and use.

"Respondent further avers that while the final decree of this honorable court would, as between private individuals, have given a right absolutely to the issuance and execution of a writ of possession, yet under the law and jurisprudence of this state, with a portion of the property in possession of and use by a public corporation entitled to the right of eminent domain, the owner was and is limited and relegated to a right of action for damages in so far as that portion of the property be concerned which was in the actual possession of and being used by the public service corporation for the benefit of the public, and that his counsel, learned in the law, informs him that the advice which they gave him in this matter, and upon which he acted, was based upon an unbroken line of jurisprudence of this court, as set forth in the following cases: Pons v. Yazoo & M. V. R. Co., 131 La. 313, 59 South. 729; Moore v. M. L. & T. R. R., 126 La. 872, 53 South. 22; McCutchen v. T. & P. R. R., 118 La. 436, 43 South. 42; Mitchell v. Railroad Co., 41 La. Ann. 363, 6 South. 522; St. Julien v. Railroad Co., 35 La. Ann. 924; Bourdier v. Railroad Co., 35 La. Ann. 947; Railroad Co. v. City, 31 La. Ann. 478.

"And your respondent invokes this line of jurisprudence as a rule of property, and as a full and entire justification of the action taken by him and the said New Orleans Railway & Light Company in the premises.

"Wherefore he prays to be hence dismissed with costs, and for general and equitable relief.
"New Orleans Railway & Light Company,
                "Hugh McCloskey, President."

"Return of Hon. Porter Parker, Judge, to Rule for Contempt."

"And now into this honorable court comes Porter Parker, a judge of the civil district court for the parish of Orleans, presiding over divi-

sion D thereof, in response to the rule herein taken by W. J. Roussel and Jasmin Feitel, through Lyle Saxon and William W. Wall, their attorneys, commanding your respondent to appear in this honorable court, on the 28th of April, 1913, to then and there show cause why he should not be punished for contempt of this honorable court, for impeding, interfering with, obstructing, hindering, and refusing to execute a judgment and decree of this honorable court, and for answer and return thereto, says:

"That when your respondent and defendant in rule became a judge of the civil district court for the parish of Orleans, presiding over division D thereof, he found pending on the docket of the said court and allotted to the said division D, the suit of Roussel et al. v. Railways Realty Company, and in due course the said cause came on to be heard and tried before him, and therein your respondent rendered judgment, dismissing the suit of the plaintiff, and affirming the title of the defendant to the real estate in question.

"That in due course a suspensive appeal was taken from his judgment to the honorable the Court of Appeal for the Parish of Orleans, which court reversed the judgment rendered by your respondent, and gave judgment in favor of the plaintiffs; that this decree of the honorable Court of Appeal for the Parish of Orleans was taken by writ of certiorari or review, to this honorable court, where the judgment of the honorable the Court of Appeal was reversed, and the judgment rendered by your respondent reinstated, but that a rehearing was granted by this honorable court, and on rehearing the original judgment of this honorable court was set aside, and the judgment and decree of the honorable Court of Appeal were affirmed, declaring the plaintiffs, Roussel and Feitel, to be the owners of the property in question.

"That in due course the decree of this honorable court was filed in the honorable the civil district court for the parish of Orleans, in division D, over which your respondent presides, and that thereupon, in accordance with the practice in the courts of this state, your respondent, on motion of the plaintiffs, Roussel and Feitel, through their counsel aforesaid, rendered its order that the said opinion and decree of the honorable Court of Appeal for the Parish of Orleans, and the opinion and decree of the honorable the Supreme Court of the state of Louisiana, affirming the opinion of the Court of Appeal, be filed and recorded according to law, and that the opinion and decree of the Court of Appeal, as affirmed by the opinion and decree of the Supreme Court of the state of Louisiana, be made the judgment of this court, meaning the civil district court for the parish of Orleans, division D.

"Your respondent now shows unto your honors that the effect thereof, in his opinion, was to create a condition in all respects similar to that which would have been created had your respondent in the first instance rendered judgment in favor of the plaintiffs, Roussel and Feitel, declaring them, in the petitory action

brought by them against the Railways Realty Company, to be the owners of the property in question, and that such judgment had become final by lapse of time.

"Your respondent therefore considered, and does now consider, that the execution of the judgment aforesaid rested entirely with him, in the same manner and to the same effect as if the judgment had originally been by your respondent handed down in favor of the plaintiffs; and your respondent did not consider, and does not now consider, that the fact that he substituted the decree of the appellate court for that of his court in the slightest manner affected the right, jurisdiction, or authority of your respondent to control the execution of the said judgment, always and at all times subject to the appellate and supervisory jurisdiction of the honorable the Court of Appeal, and of the honorable the Supreme Court of Louisiana.

"Your respondent further shows it has been made to appear to him, upon the entry and record of the opinion and decree of the honorable the Court of Appeal for the Parish of Orleans and of this honorable court upon the minutes of said division D of said civil district court over which your respondent presides, that the plaintiffs applied for and obtained from the clerk of the civil district court a writ of possession, commanding and instructing the civil sheriff for the parish of Orleans to place the said plaintiffs in possession of the property which they had claimed in the petitory action referred to, and which had been decreed to belong to them.

"Your respondent now avers that after the issuance of the writ of possession by the clerk of the civil district court as aforesaid, he was presented with a petition by the New Orleans Railway & Light Company, a third person, and not a party to the original suit of Roussel and Feitel against the Railways Realty Company, above referred to, a copy of which petition he annexed to this return as part hereof, in which lawful rights were claimed, which the petitioner claimed should be protected by a writ of injunction, and he further shows that the said petition was duly sworn to by a reputable citizen of this city, and presented by reputable attorneys of this bar, and after reading over the same and taking into consideration the law, codal and statutory, and the unbroken jurisprudence of this court as set forth in the following cases: Pons v. Yazoo & M. V. R. Co., 131 La. 313, 59 South. 729; Moore v. M. L. & T. R. R., 126 La. 872, 53 South. 22; McCutcheon v. T. & P. R. R., 118 La. 436, 43 South. 42; Mitchell v. Railroad Co., 41 La. Ann. 363, 6 South. 522; St. Julien v. Railroad Co., 35 La. Ann. 924; Bourdier v. Railroad Co., 35 La. Ann. 947; Railroad Co. v. City, 31 La. Ann. 478—he issued the injunction therein prayed for.

"That your respondent was of opinion that the title and ownership of the plaintiffs, Feitel and Roussel, in and to the property as recognized and decreed by the opinions and decrees of both the Court of Appeal for the Parish of Orleans and of the honorable the Supreme Court of the state of Louisiana, only gave to the owners of said property the right of possession, in so far as the property was in the hands of private parties, or in the hands of any one not in use for public purposes, but your respondent was of opinion and belief, and is still of the opinion and belief, that where the private property had been in good faith taken by a public service corporation, vested with the right of eminent domain and the power of expropriating private property for public purposes, and that same had been built upon, tracks laid thereupon, improvements thereupon erected, all for the purpose of carrying out the functions and duties devolving upon the public service corporation, and that same was actually in use for such purposes, and that the public, which is served by a public service corporation, was in the enjoyment thereof, then your respondent was of the opinion and belief, and is still of the opinion and belief, that the ownership of such property only gave to the owner thereof, under the law and jurisprudence of this state, a right to damages for the taking thereof, but gave no right whatsoever, and does not now give the right, to dispossess the public service corporation, demolish or remove or interfere with the operation of the tracks and of the improvements appurtenant thereto, placed thereon for the benefit and service of the public.

"Your respondent further avers that the allegations made in the original petition of the plaintiffs herein, and the proof adduced on trial, showed that the value of the property in question was less than the sum of $2,000, and that said plaintiffs appealed from the judgment so rendered against them to the honorable the Court of Appeal for the Parish of Orleans, because the record showed that the said value was less than the sum of $2,000, and therefore within the appellate jurisdiction of the honorable the Court of Appeal for the Parish of Orleans; and from the sworn allegations made herein on the petition of the said New Orleans Railway & Light Company in this case, your respondent was of the opinion and belief, and now is of the opinion and belief, that an injunction should issue in the matter to arrest the dispossession of the public service corporation, and the destruction of public rights and enjoyment, upon the furnishing of a bond, and in an amount sufficient to amply protect the owners of the property, and that thereupon your respondent fixed the bond for the injunction at the sum of $2,500, being an amount more than the actual value of the property in question, as developed upon the trial before him as aforesaid, and accordingly respondent gave an order that upon the furnishing of such bond with good and solvent security, the injunction should issue.

"Your respondent further shows to this honorable court that in so doing he believed, at the time of ordering the issuance of the injunction, and does now believe, that he was acting in accordance with the laws of this state, and that under the showing made, under oath, by

the plaintiffs in injunction, to have refused the same would have been a denial of justice and a willful and unpardonable disregard for the jurisprudence of this state as clearly laid down in the line of decisions heretofore quoted.

"In conclusion, your respondent most respectfully shows unto your honors that during the period of his practice as an attorney at this bar, and during the term that he has occupied a judicial position on the bench of the civil district court, he claims that no citizen and no lawyer in this community has shown more profound respect for, and ready obedience to, the decrees of the courts of this state, and especially to the decrees of the honorable the Supreme Court of Louisiana, than has your appearer; and respondent feels most profoundly the humiliation and mortification of being haled before the bar of this honorable court upon a quasi criminal charge of contempt of its authority, of which offense he cannot bring himself to believe that either the movers or this honorable court could ever have seriously for one moment supposed him guilty.

"Wherefore, the premises considered, your respondent most respectfully prays that he be hence dismissed, and as in duty bound will ever pray, etc.                    Porter Parker.
    "H. C. Cage, of Counsel."

"Return of Bernard McCloskey, Percy S. Benedict, W. C. Dufour, and H. Generes Dufour to Rule for Contempt.

"And now into this honorable court in their proper person come Bernard McCloskey, Percy S. Benedict, William C. Dufour, and H. Generes Dufour, individually and as counsel for the New Orleans Railway & Light Company, and of Hugh McCloskey, its president, and for answer to the rule issued by this honorable court on the 22d day of April, 1913, directing your respondents to show cause why they and each of them should not be punished by this honorable court for contempt of its authority, and for impeding, interfering with, obstructing, hindering, and refusing to permit the execution of its judgment and decree rendered in this cause on the 17th of March, 1913, says:

"That your respondents aver that they desire to assume, and do now assume, before this court full responsibility for the action taken by Hugh McCloskey, Esq., individually and as president of the New Orleans Railway & Light Company, and by the said New Orleans Railway & Light Company; and your respondents aver that said action was so taken and had upon their advice and counsel, which advice and counsel they gave in good faith and in reliance upon the law of this state as repeatedly announced by this honorable court.

"Further answering, your respondents aver that they desire to adopt, and that they do now adopt, the averments of fact and the conclusions of law as set forth in the answer to the rule made and filed contemporaneously herewith by Hugh McCloskey, individually and as president aforesaid.

"Wherefore, they pray to be hence dismissed with costs and for general and equitable relief.
            "Bernard McCloskey.
            "Percy S. Benedict.
            "Wm. C. Dufour.
            "H. Generes Dufour."

We omit the returns of the clerk of court and the sheriff as needless to be transcribed.

On the trial in this court the plaintiffs offered in evidence the whole record in this case, as well as the record in the discontinued suit against the New Orleans Railway & Light Company, and two affidavits, to the effect: That the civil sheriff, Louis Knop, after receiving copy of the injunction, refused to proceed with the writ of possession, although the plaintiffs insisted upon his doing so, and protested against his obeying the injunction. That the officers of the two corporations are the same. That on the trial of the suit against the New Orleans Railway & Light Company, Messrs. Hugh McCloskey and Bernard McCloskey and Percy S. Benedict were present, and remained in court until the dismissal of the suit. That Messrs. Bernard McCloskey and Percy S. Benedict were the attorneys of the defendant in the suit, and Mr. Hugh McCloskey was then and is now the president of the two corporations. That the evidence of plaintiffs in that suit was the same as in the present suit; that:

"Upon the completion of the offering of plaintiffs' testimony, said Percy S. Benedict and Bernard McCloskey, attorneys for defendant in that suit, produced a copy of said act passed before Abraham Goldberg, notary public, on May 24, 1909, and disclaimed, on behalf of the defendant, possession of the property involved in that suit, or any claim thereto; that thereupon, said Hugh McCloskey, president of both of said corporations, laughed out, and the trio left the courtroom with their faces wreathed in smiles at the signal legal victory thus attained."

The defendants in rule offered in evidence the petition in injunction, together with the blueprint thereto attached, the ordinance of the city council granting a franchise to the New Orleans Railway & Light Company to

operate a railroad to Spanish Fort, and the charters of the two corporations.

[1] It is contended broadly in the brief of the counsel for the plaintiffs in rule that a district court cannot enjoin the execution of a judgment of the Supreme Court. And it is argued that one district court cannot enjoin the execution of the judgment of another district court, and a fortiori not that of the Supreme Court. But that is a non sequitur. The execution of the judgments of the Supreme Court must be enjoined in the district court or not at all, since the Supreme Court has no original jurisdiction, and therefore could not entertain an injunction. In its history, now going back more than a hundred years, it has never done so, although the execution of its judgments has been enjoined probably more than a thousand times, and always, necessarily, in the district court.

[2] Of course, a district court cannot reopen a controversy settled by a judgment of this court; but this is not done when, as an effect of the execution of a judgment, a controversy arises that was not involved in the one settled by the judgment. This occurs whenever such execution affects injuriously the rights of some person not a party to the controversy in which the judgment was rendered and therefore not bound by the judgment. To take an illustration more or less analogous to the case at bar, suppose a petitory action were brought against the possessors of one of the plantations fronting on the Mississippi river in the parish of Jefferson opposite this city, but without impleading the Southern Pacific and Texas & Pacific Railroads which traverse these plantations, and the decree of this court in favor of the plaintiffs came to be executed, and it was sought to oust these two railroads unceremoniously, as was being attempted to be done with the New Orleans Railway & Light Company in this case, would any one

suppose that these railroads could not have recourse to the courts to protect their possession, or else that they would have to go to the Supreme Court with their petition for injunction? No one, we imagine, would say such a thing.

The decisions cited by learned counsel have reference to cases where the judgment of this court was sought to be amended, or interpreted, or reviewed. They are: Cox v. Thomas, 11 La. 366; Lovelace v. Taylor, 6 Rob. 93; Stafford v. Renshaw, 33 La. Ann. 443; State ex rel. v. Pilsbury, Mayor, 35 La. Ann. 408; State ex rel. v. Judge, 38 La. Ann. 276; and Succession of Martin v. Succession of Hoggatt, 37 La. Ann. 343. They have no application whatever to a case where a person not a party to the judgment seeks to regulate its operation in so far as it may affect his rights prejudicially.

[3] It is noteworthy that in these cases where the execution of the judgment of this court was admittedly interfered with, and, too, by a party to the judgment, the thought of such interference being a contempt of court did not occur to any one. The reason is that no such sacrosanctity attends the judgment of a court as that to touch it is to lay a sacrilegious hand upon some Ark of the Covenant, and that the judgments of this court are no more sacred than those of any other court. Of course, they must be obeyed by all who owe allegiance to them; but if any one not a party to them has a grievance against them, or honestly thinks he has, the doors of the courts are wide open to him. The Constitution so requires. The idea that such a litigant can be treated as a criminal occurs in the present case for the first time in the history of our jurisprudence, and would not have occurred in the present case if not for the heat engendered in the course of the controversy in which the judgment in question was rendered.

For the very reason, however, of the long

duration and acrimony of that terminated controversy it behooved the courts not to allow the same controversy to be renewed in some new phase, and if our learned Brother the respondent judge had had any doubt of the good faith of the applicant for the injunction, it would have behooved him to refuse to grant it. But he did not; and no one looking at the matter dispassionately can have.

[4] If the New Orleans Railway & Light Company were claiming under or through the Railways Realty Company, it would have no case; and this would be so clear that an attempt on its part to renew this long and bitter controversy upon such a bare, sheer pretense of right would certainly border upon disrespect for the judgment of this court, if not actually such; but it is not claiming through or under the Railways Realty Company, but is asserting an entirely independent right, a right claimed to have been derived from the law in the manner set forth in the return: That being a railroad corporation, authorized by law to expropriate whatever property might be necessary for the operation of its road, it went into possession of the property in question with the acquiescence of the plaintiffs in rule, and is entitled to continue in possession, subject only to its obligation to respond in damages to the plaintiffs in rule, said property being necessary for the operation of its said road.

That the New Orleans Railway & Light Company is a railroad corporation authorized to expropriate property could not be, and is not, denied, and that a railroad that has gone into possession of property necessary for the operation of its railroad with the acquiescence of the owner, tacit or express, cannot be ousted, but may only be made to respond in damages, will hardly be contested, in view of the decisions cited in the return; and the question whether the property in question in this case is thus necessary, and whether it was taken possession of with the acquiescence of the plaintiffs in rule, cannot be considered on this rule for contempt, but are properly to be determined on the trial of the injunction.

[5] On this rule for contempt the only question to be considered is whether the propounding of the said cause of action in the injunction was such a shallow, barefaced pretense as to be a mere trifling with the authority of this court, such a ground of action as the litigant could not have honestly believed to be well founded. A rule for contempt is in the nature of a criminal prosecution; the court will not on such a rule determine the rights of the parties in the main litigation.

[6] In their application for the rule plaintiffs in rule say that the Railways Realty Company is a mere holding company for the New Orleans Railway & Light Company. We do not understand plaintiffs in rule to mean by this that the two companies are not separate and distinct corporations, but one and the same. The point is not elaborated in the brief of the learned counsel of plaintiffs in rule; the only reference, or even allusion, to it therein being where it is said that the respondent judge knew that the one company was merely a holding company for the other. The two companies have separate charters, and therefore are not legally one and the same, and these charters show that their incorporators are not the same; and, for all that appears, the holders of their stock may not be the same. From the fact that plaintiffs in rule allege that the one company is a licensee of the other, which necessarily implies that they are separate organizations, the inference would be that the plaintiffs in rule are not contending that the two companies are one and the same.

Indeed, one of the learned counsel of plaintiffs in rule conceded in oral argument that the two companies are distinct and separate; and, in fact, the plaintiffs in rule themselves recognized that much, and even acted upon that assumption, when they voluntarily dismissed their suit against the one company, as having been brought against the wrong defendant, and at once renewed it against the other company as being the right defendant. This was a recognition that the two companies were not one and the same, and that the one could not stand in judgment for the other. The two companies being thus separate, the New Orleans Railway & Light Company cannot be said to have been a party to the suit against the Railways Realty Company, and bound by the judgment rendered in that suit.

It was asserted in the oral argument, by the learned counsel for plaintiffs in rule, that the injunction covered not only the property actually occupied by the railroad, but all the property involved in the suit against the Railways Realty Company. We do not so read the petition for injunction. It appears to us to claim only the property actually occupied by the railroad and its appurtenances. It claims, not the whole of the lots, but only portions of them, and annexes a plat to show what these portions are. We must say that this plat is not very clear, and, for all that we can ascertain, may include practically all of the land involved in the suit with the Railways Realty Company; and therefore. the learned counsel for plaintiffs may be approximately, or to all intents and purposes, and as a practical question, correct in their said statement, but this court cannot go into all that on the trial of the present rule. Those are matters which will be threshed out on the trial of the injunction.

The rule nisi is therefore recalled at the cost of the plaintiffs in rule, Willis J. Roussel and Jasmin Feitel.

BREAUX, C. J. As there was no intention to treat this court with contempt, there was no contempt.

I therefore concur in the decree and go no further.

MONROE, J. I dissent and will give reasons in writing. See 62 South. 617.