On the Merits.
MONROE, C. J.
In March, 1010, plaintiffs! instituted a petitory action against the New Orleans Railway & Light Company (hereafter • called Railway Company) praying to be decreed the owner, entitled to possession, of certain lots of ground, of which they alleged that the company, thus made defendant,' was. in unlawful possession. The company filed a general denial, thereby denying the title, set up by plaintiffs, and the possession alleged in itself — and, on the trial of the case, seven months later, offered in evidence a writ-.' ten instrument, purporting to show that the title to the property was in a corporation bearing the name “Railways Realty Com-, pany” (hereafter called Realty Company). Plaintiffs thereupon discontinued the suit-against the Railway Company, and on.Oeto-. ber 28, 1910, brought it against the Realty Company, .recording a notice of its institution and pendency, in the mortgage office, oh. the same day. Thereafter, and while the suit was pending, the Railway Company, acting under permission, which it sought and* obtained, from the Realty Company, entered upon the property and laid certain tracks' and erected certain buildings; one of the paragraphs in its petition for injunction (the basis of the proceeding and judgment' which. constitute the subject-matter of this review) reading as follows:
- • “(5) That, at the time the New Orleans Rail'way & Light Company constructed the said track, appurtenances, and the said depot and ; approaches, it had acquired permission therefor -from the Railways. Realty Company, * * * which company had acquired the aforesaid property from the receiver of the New Orleans, Spanish Fort & Lake Railroad Company, by . act before Abraham Goldberg, notary public, on May 24, 1909, duly recorded in the records of the conveyance office of this parish, said receiver acting under and by virtue of an order of this Honorable Court, dated April 29, 1909.”
In the meanwhile, the suit for the recovery of the lots was prosecuted through several years, and several courts, to a judgment in this court (132 La. page 379, 61 South. 409, 833), affirming the judgment of the Court of Appeal, which had decreed plaintiffs to be the owners, entitled to the possession, of the lots; and the mandate of this court was sent to the district court for execution, and the district court issued its writ, directing the .sheriff to put plaintiffs in possession. Thereupon the Railway Company obtained ex parte from the same court a writ of injunction, restraining the sheriff from thus executing the judgment of this court, the allegations of its petition* for said writ (in addition to those above quoted) being, in substance, that plaintiff is a railway company and common carrier, empowered to construct and operate railroads within the limits of the city of New Orleans; that on July 30, 1910, it acquired from said city the franchise for “the right of way and the right to construct, maintain, use, and operate, for a term of 50 years from the date of contract, a double-track street railway, with all necessary switches,” etc., on certain streets, and through certain territory, “with privilege of running on or across private property” should it so desire; that, exercising the rights so required, it constructed a railroad, which is still in operation, over certain property, which is described, and that no protest was then made against such action by any one, and that, *623 having obtained the permission of the Railways Realty Company, the recorded owner, it believed itself to be fully authorized in the premises; that it has been informed by the sheriff that he is charged with, and intends to execute, a writ of possession, issued in the suit of Willis J. Roussel & Jasmin Eeitel v. Railways Realty Co., and thereunder to place the plaintiffs so named in possession of said described property now covered by the tracks, depots, station house, appurtenances, and approaches by its said railroad; that, under the law, being a common carrier, with the right of eminent domain, the sheriff cannot legally eject it from said premises; that it is operating its said road in connection with “Spanish Fort,” an amusement park, open at all times, without charge, and, “in addition, under a franchise from the city of New Orleans, acquired at public competition, and with the right to cross private property whenever it may deem advisable”; that said Roussel and Eeitel should not be allowed to evict petitioner, but' should be relegated to an action in damages; that the effect of the execution of the writ of possession would be to divest' plaintiff of vested rights to operate its railroad into its terminus, would deprive the people of New Orleans of access to a public playground, to their disadvantage—
“and to the great harm and injury of your petitioner, and operate a dispossession of real property and real rights of which your petitioner has had the real and actual possession for more than one year, and claims the possession and enjoyment, and the issuance of which writ of possession herein operates as a disturbance thereto.” •
“That, whilst the execution of said writ of possession will operate to the irreparable injury of your petitioner, in the dispossession of its real rights, said Roussel and said Feitel have an ample remedy, by way of damages, against your petitioner, who, under the law, is entitled to the right of possession, therefore entitled to keep said property.”
It is further alleged that petitioner has attempted an amicable settlement with said Roussel and Feitel, without success, and it prays that they be enjoined from interfering with its possession and enjoyment of the property. Defendants in injunction thereupon proceeded in this court against plaintiffs in injunction, the judge by whom the writ had been issued, and the sheriff, for contempt, but (the present writer dissenting) the proceeding was dismissed. 133 La. 153, 62 South. 608. They then filed (in the district court) a rule to dissolve the injunction, and an answer to the merits, and, the case having been tried, there was judgment for the plaintiffs in injunction, from which defendants in injunction prosecute this appeal.
Opinion.
The Railway Company, having been made defendant in a petitory action disclaimed title to and possession of, the property sued for, and, after delaying matters for some seven months, referred the plaintiffs to the Realty Company (a corporation occupying the same office and administered by the same officers as the Railway Company) as the owner against whom the suit should be brought, and the suit was brought against the Realty Company on the following day, and notice of the filing and pendency thereof was recorded in the mortgage office of this parish on the day of the filing. At a later date, and while the suit so brought was pending, the Railway Company sought, and obtained, permission from the Realty Company to enter upon the property thus claimed, and, so entering, as the licensee of the Realty Company with full, actual, and constructive knowledge of the existence and character of the pending litigation, placed upon the land in dispute the “tracks, depots, station house, appurtenances, and approaches” to which it refers in its petition for injunction.
[4] Article 2453 of the Civil Code, as amended and re-enacted by Act No. 3 of 1878, page 31, reads;
*625 “Art. 2453. The thing claimed as the'property of the claimant cannot he alienated pending the action, so as to prejudice his right.
“If judgment be rendered for him, the sale is considered as a sale of another’s property, -and does not prevent him from being put in possession by virtue of such judgment.- Nor shall it be lawful for debtors or third possessors of property, subject to mortgage of any kind, .to-transfer or alienate such property, pending an action to enforce the mortgage, and any transfer or alienation made in contravention of the provisions of this article, shall have no-effect * * * against the plaintiff, or plaintiffs, in such pending action.”
In 1904, the General Assembly passed-Act-No. 22 of the session of that year, reading (in part):
“Section 1. * * * That, on and after'Jan-‘ uary 1, 1905, the pendency of an action in any court, * * * affecting the title, or asserting a mortgage or lien upon immovable property, shall not be considered or construed as notice to third persons not parties to such suit, unless a notice of pendency of such action shall have been made, filed or registered, in compliance, with this act.”
“Sec. 2. * * * That the notice above referred to shall be in writing, * * * and said notice shall be recorded in the mortgage office of the parish where the property to be affected is situated, and Shall have effect from the date of filing.” - -
In Wells v. Blackman, 117 La. 359, 41 South. 648, this court said:
“Said Act No. 22 has brought no change in. our law, except that, whereas, formerly third, persons dealing with property involved in litigation had to take notice of the pendency of the litigation without registry (article 2453, BeY. Oiv. Code) now, under said act, they are not required to do so, unless the notice prescribed by the act has been duly recorded.”
[6] As bearing upon the persons to whom; the act thus quoted is to be applied, we quote from good authority the following definitions of “Privity” and “Privies,” to wit:
“Privity. In a general sense, private knowledge; joint knowledge, with another, of a private concern, which is often supposed to imply consent or concurrence; cognizance, implying consent or concurrence. In law, a derivative kind of interest, founded upon, or growing out of, the contract of another, as that which subsists between an heir and his ancestor, between executor and testator, and between lessor and lessee and his assignee; a relation which creates obligations.” 32 Cyc. 392.
In note 64 to the above we find:
“ * * * He who is in privity stands in the shoes or sits in the seat of the owner from whom he derives his title, and thus takes it charged with the burden attending it. Boughton v. Harder, 46 App. Div. 352, 61 N. Y. Supp. 574. Privity exists between two successive holders when the later takes under the earlier, as by descent (for instance, a widow under her husband, or a child under parent), or by will or grant, or by a voluntary transfer of possession. Sherin v. Brackett, 36 Minn. 152, 154, 30 N. W. 551. * * *
“Privies. — a. Judgments Binding on Privies. A judgment is conclusive and binding, not ' only upon the parties to the action in which it -was rendered, but also upon persons who are in privity with them in respect to the subject-matter of the litigation.
“b. What Constitutes Privity. Privity means -a mutual or successive relationship to the same rights of property; and, within the rules relating to the conclusiveness of judgments, all persons are privies to a judgment whose succession to the rights of property thereby adjudicated or affected were derived through or under one or the other of the parties to the action, and accrued subsequent to the commencement of that suit.” 23 Cyc. 1253, 1254.
“Successors to, or ayans cause of, the parties to the original suit are, in legal contemplation, the same as such parties, provided they acquired their title after the institution of the original suit.” Hargrave v. Mouton, 109 La. 533, 33 South. 590; Succession of Theriot, 120 La. 388, 45 South. 286; Roach v. Craig, 124 La. 684, 50 South. 652; Lacassagne v. Chapuis, 144 U. S. 119, 12 Sup. Ct. 659, 36 L. Ed. 368.
It is unnecessary, for the purposes of this case, to. consider how far the above-quoted, well-recognized rules upon the subject of “privity” and “privies” have been affected by the act of 1904, or whether the notice which was given to the Railway Company by the filing of the petitory action against it, in the first instance, was not all the notice that it was entitled to, that the plaintiffs in that action were claiming to be owners of property, of which, after a similar suit had been instituted against the Realty Company, it had acquired possession, as the licensee of that company; for, conceding, arguendo, that the Railway Company was a third person, quoad, the subject-matter of the suit, it received the notice required by that act. The other questions presented in the case are I equally simple.
*627 [3, 5] A railroad company, though a common. carrier and vested with the power of eminent domain, has no right to enter upon private property, save under the authority of the owner, or of a verdict and judgment obtained contradictorily with the owner, and after first paying adequate compensation, and no municipal corporation within the state, nor the state itself, can confer such right; for the Constitution of the United States and of the state alike declare that no person shall be deprived of life, liberty, or property without due process of law, and that private property shall not be taken for public use or purposes without just or adequate compensation; and the state Constitution (article 167) requires that the compensation shall be first paid.
The pretext, set up in the petition for injunction, that the owners, made defendants, acquiesced in the taking of their property is not sustained by the fact; and the decisions of this court, cited as supporting the proposition that, where the owner of land acquiesces in the building thereon of a railroad, he cannot thereafter require the road to be removed, but is relegated to an action for the value of the land, or in damages, have therefore no application. The owners now before the court began their suit for the recovery of their land before anything whatever had been put on it, and the Railway Company had actual knowledge of the bringing of the suit, because it was made defendant, and defended for seven months, during which period there was still nothing put on the land. The suit was then brought against the Realty Company, and prosecuted to a final judgment in the court of last resort, and to a writ of possession, and it was during that' period of its prosecution that the Railway Company, with actual knowledge and the constructive knowledge resulting from the recording of the notice under the act of 1904, in disregard of the rights of the owners, built its road and its depot, etc., which arbitrary and unlawful action, it now alleges, gives it a vested right to hold the property of the owners who were demanding it, and to drive them into another protracted litigation for the recovery of damages. The owners could have made no stronger protest against the detention of their property than by their suit for its recovery. That was, in fact, their proper and only remedy, for there is no writ whereby a defendant, in possession for a year under claim and color of title, can be evicted until the question of title vel non shall have been determined; and it has remained to be demonstrated in this case that, even after an adverse decision, which would ordinarily be regarded as final on that question, the unlawful possession may still be retained. We are of opinion, however, that the hour for the termination of the possession of the plaintiff in injunction has now arrived.
It is therefore adjudged and decreed that the judgment appealed from be avoided and reversed; that the writ of injunction herein issued be dissolved; that the demands of the New Orleans Railway & Light Company, plaintiff in injunction, be rejected; that this suit be dismissed at its cost, in both courts; and that the right of the defendants in injunction to sue for damages be reserved.
O’NIELL, J., dissents and will hand down reasons. See 69 South. 32.