## No. 1183.

## BOURDIER & BELLESEIN VS. MORGAN'S LOUISIANA & TEXAS RAILROAD COMPANY.

A person cannot treat a railroad's entry upon his land as tortious after he has by conduct acquiesced in it, and stood silently by until it was accomplished, and the road bed was equipped with ties and rails.

But a railroad company must not so construct its road as to inflict injury upon the proprietor of land over which it passes. It is liable in damages for injuries to the land occasioned by closing ditches and obstructing drains, whereby water is impeded or obstructed in its passage, and the crops are thus injured or destroyed.

The liability of a railroad company is substantially the same as that of an individual for torts or actionable injuries occasioned by its improper or defective construction, and for obstructions created by it to the natual flow of water, whereby adjacent land is injured in its cultivation.

APPEAL from the Nineteenth District Court, Parish of St. Mary. *Goode, J.*

*B. F. Winchester* and *A. L. Tucker* for Plaintiffs and Appellees :

1. The plea of the general issue, and special defenses in justification are inconsistent issues, and cannot stand together ; the former is waived by the latter, and the defendant should have been required to elect between them. 10 L. 306 ; 28 An. 239, 109 ; 29 An. 136 ; 31 An. 84.

2. The charter of a company is a private statute, not a special law, requiring plea and proof to be noticed judicially. 33 An. 956, 954 ; 23 An. 415.

3. After issue joined an answer cannot be amended so as to change the original issue, nor can it be amended after the parties have gone to trial ; *a fortiori*, it cannot be amended after plaintiffs have closed their direct evidence. 14 An. 355 ; 19 L. 547-8 ; 22 An. 350-1 ; 1 Rob. 581 ; 3 Rob. 126.

4. The right of passage or of way, taking earth or sand is a servitude. C. C. 721.

The right of passage or of way is a discontinuous servitude. · C. C. 722, 737.

Discontinuous servitudes can be established only by title ; immemorial possession itself is not sufficient to acquire it. C. C. 766.

The title to the right of way to be valid against the third parties must be recorded within the time required for the registry of mortgages. C. C. 1554-6-7, 3447, 3346.

5. The donation of the right of way to a railroad must be granted under the formalities required by the Civil Code for donations *inter vivos*, must be accepted in the manner required by law ; and the act of donation and acceptance must be recorded within the time, and in the manner required by law, in order to affect third parties. C. C. 1554 *et seq*; 3346-7.

6. Servitudes are extinguished by abandonment or by ten years non-usage. C. C. 783, 789. And the time of prescription for non-usage begins for discontinuous servitudes from the day they ceased to be used ; and for continuous servitudes, from the day any act contrary to the servitude has been committed. C. C. 790.

7. One co-proprietor of an undivided estate cannot impose a servitude thereon, without the consent of his co-propietor. C. C. 738.

8. Morgan's La. & Texas R. R. Co., incorporated in 1877, is not the legal successor of the N. O., Opelousas & G. W. R. R. Co. and has shown no title from the same.

9. Since the right of way could only be acquired by a written title from the proprietors or by expropriation ; and consent could not be shown by parol to occupy the land, hence, defendant Company could acquire no right from the mere inaction of plaintiffs, and it

Bourdier & Bellesein vs. Railroad Company.

affords "no excuse against the payment of these damages, that the plaintiffs made no opposition or objection." 17 L. 395; 32 An. 839; Salabah vs. Marsh, 34 An. 1053.

10. Entering upon land without the consent of the proprietor, and without authority of law is an act of trespass for which damages lie. 37 Miss. R. p. 700.

11. Measure of damages—authorities quoted in brief p. 23; Shearman on Negligence, 3d ed. p. 677; 8 Otto, 407 to 410.

12. Prescription cannot be set up against a continuous damage. 2 Add. on Torts, 1163; 7 Otto, 668-9; Wood on Nuisance, 823.

13. Plaintiffs are entitled to recover for loss of profits in business. 1 Sedgwick on Damages, 7th ed. 274, note 130 to 133, note 134-7-8, 143; 4 English Law & Equity Reports, 20 to 23; 1 Addison on Torts, Banks & Bro. ed. 242; Woods on Nuisance, 890-2-3, 688.

## *D. Caffery* for Defendant and Appellant:

1. A grant, or license, or request from the land owner, will justify the Company's interference with his property, which would otherwise be a trespass. Pierce on Railways, chap, 9, pp. 260-265.

2. Vindictive or punitory damages can only be inflicted where there are circumstances of fraud, malice, gross negligence or oppression.

Intent and malice are essential ingredients in cases of vindictive damages. Sedgwick on Damages, chap. 1, Sec. 38; Ib. chap. 22, Secs. 529, 530, 461.

3. Where, in an action for vindictive damages, certain actual damages, not specified as to amount, are included in the *ad damnum*, in aggravation of the wrong complained of, no recovery can be had thereon, independent of the matter alleged as the main trespass.

Where the action is not sustained on the main charge, the matters of aggravation incidental to it, fall with their principal. Greenleaf, Vol. 2, Sec. 273.

When a right of way, under private signature, is granted to a railroad company, in consideration of contemplated benefits, it is a valid grant and not a donation. 31 An. 549.

4. Where two own the land and one signs the grant and the other does not, and the one not signing is shown to have acquiesced, permitted and solicited the building of the road bed through the joint property, the grant, imperfect without the consent of the co-owner not signing, becomes perfect through his express and implied consent. Rev. C. C. 738.

5. When the estate on which a co-proprietor has granted a servitude is sold to effect a partition, and afterwards the heir of the co-owner not signing, but consenting to the servitude, becomes proprietor of the whole estate, the heir stands where the author would have stood, and is bound to permit the servitude. Rev. C. C. 741.

6. Where the owner or owners of real estate stand by and see the construction on their property of the costly and extensive work of a railroad, without protest or dissent, their consent is implied, and they cannot object to the use of the property by the railroad. 31 An. 478, Jefferson & Lake Pontchartrain Railroad Company vs. New Orleans.

7. All claims for land or damages for its extra-judicial expropriation for works of public improvement and utility are barred by two years from the actual taking and occupancy of the land for such purposes. Rev. C. C. 2630; 31 An. 478.

8. A railroad is a public road or highway. The prescription of ten years does not apply to a forfeiture of its right of way by non-user for that time. 3 An. 482, Hatch vs. Arnault; Mills on Eminent Domain, Sec. 14.

Permitting one's property to be used and appropriated for a railway or highway is in the nature of a dedication to public use, and may be proved by parol. 29 An. 38; 12 An. 108; 20 An. 339.

9. Amendments, conducive to justice, may be allowed at any time. 27 An. 316.

---

The opinion of the Court was delivered by

MANNING, J. The plaintiffs own a sugar plantation below Patter-

sonville in St. Mary through which the defendant has constructed its road, and has so built it that damage has been inflicted upon them to the extent they allege of ten thousand dollars. The cause of the damage is the closing of numerous ditches which prevents drainage, and dams up the water, and particularly a canal which is the main outlet. The road bed is built through the heart of the plantation, and runs between the stables and the sugarhouse and laborer's cabins, and is thus claimed to constantly endanger them. The defendant's acts were committed in the summer of 1879, and the suit was filed in November of the same year.

The defendant sets up title to this road bed by derivation from the New Orleans, Opelousas & Great Western Railroad, upon the validity of which we do not find it necessary to pass, nor upon its binding force *quoad* the defendants. The bed was constructed by that Company about 1858 or 1859, but remained without rails or cross ties for twenty years. The plaintiffs acquired the land in 1875, and when the defendant's employees commenced the repairs of the bed four years later, preparatory to the immediate laying of ties and rails, the plaintiffs were quiescent. They called the engineer's attention to the necessity of making culverts and having a bridge fixed, but although of course perfectly aware that the road was to be finished and operated quickly, they not only did not evince any unwillingness to its passing over their land but made suggestions to the constructing officer of works which they deemed necessary. This is the more remarkable since the road bed separated their buildings, and it must have been manifest that inconvenience and danger must result from the location of the bed in such place. One of the plaintiffs, replying to the question whether he did not know of the defendant's entry for the purpose of building the road, answers " well, I heard they were coming through from Morgan City up, but I paid no attention to it, as I thought they would ask my permission to pass."

In civil conduct, not less than in military affairs, the arm that strikes a prompt and vigorous blow achieves success before the adversary recovers from his surprise. The Company went straight forward, and the dazed plaintiff was roused from his attitude of waiting for his permission to be asked by the scream of the locomotive.

. All that part of the complaint which is based upon an alleged tortious entry must therefore fall. If the entry was unlawful, the plaintiffs condoned it. They should .at once .and peremptorily have forbidden the entry of the defendant in 1879, if they intended to dispute its right to the road bed which was already upon their land when they bought and was too prominent an object to be ignored. They should have

denied the defendant access, and have prevented it by using legal process.

But the defendant has no right in constructing its road to cause injury to the owners of land over which it passes. The successful cultivation of land depends upon its drainage in great degree. Obstruct that, and you convert a soil that would annually teem with the richest product, into a pestilential marsh. The flow of the water in its natural course upon this plantation is from front to rear. The plaintiffs had made a reservoir or pond in order to supply water to their machinery, and that pond is supplied from the Atchafalaya. The flow of water to the pond has been materially impeded and obstructed by defendant's road, and the plaintiffs have been put to additional expense annually in consequence thereof. They had dug a canal, by means of which the water was drained from their front lands, and several years of successful tillage had demonstrated the wisdom of their work and its absolute necessity. Other ditches, dug with reference to this main canal, perfected a system of drainage, the beneficial results from which were visible in each crop. Through the Company's fault in locating culverts which do not correspond to those ditches, the whole of this system of drainage has been made awry, and thwarted, and damage to crops has ensued.

The evidence leaves no doubt that it was the defendant's road that destroyed this system by obstructing the outlets for the water, and closing the ditches. Bellesein says, there were twenty-five or thirty ditches. The culverts being insufficient in number and size, water was spread over 122 acres. Fifteen or twenty acres of cane next to the Railroad were nearly all killed while the cane elsewhere was good, and the road passes through the best land of the plantation, producing an average of 2,000 pounds of sugar to the acre.

He continues: "Before the Railroad was put there by the defendant we were able to drain the front lands across the old road bed. If the Company had made 4 culverts through there 7 feet wide, that is, four more than that one that is there, it would have been sufficient. I would have saved several crops on the front. I could have had a ditch opposite each culvert, and drained the rear and saved the back lands from overflow. Twenty acres of this back land overflowed as good as the front, and capable of producing 2,000 pounds of sugar to the acre. Overflows every time there is a heavy rain."

Two other witnesses shew the disastrous effect of the defendant's works:

Wilson Danis: "There were four openings through the old road bed. They were filled up by the Company. Before the new road, there were

ditches straight across the old bed. We never raise good cane next to the Railroad on that portion since the Railroad has been constructed. Before that crops were not affected as now. The ditches were filled up by grading the road and drainage was obstructed."

J. M. Charpantier: "Five ditches ran through the old road bed; this Company filled up two. All the water from 150 acres on the Bayou, North side, has to come through one culvert; it would require for the natural drainage as many culverts as ditches. Plaintiffs have one ditch for every acre. They have fifteen leading ditches; if there were the same passage through the road opposite them, the front would drain as well as the back. All has to come through a culvert of eight feet—the water stands and causes injury. The openings closed has, and will continue to affect the plantation and drainage for the future."

The consequence is that fifteen acres of the front land next the railroad is so overflowed as to materially injure if not to destroy the crops upon it, and twenty acres in the rear are similarly affected. The liability of a railway company for torts or actionable injuries to real estate is substantially the same as that of individuals, and the proof is abundant that the injuries of which the plaintiffs complain are the direct result and consequence of the defendant's acts in the construction of its road without regard to the need of the plaintiffs to keep their system of drainage in unobstructed operation. The obstruction was wilful and in contempt of their protest. The danger was pointed out, and their efforts to avert it by having drains left open were disregarded.

The jury found for the plaintiffs and assessed the damages at $3,333.33. The plaintiffs pray an increase of that sum. It is enough and not too much.

Judgment affirmed.

------

ON APPLICATION FOR REHEARING.

POCHÉ, J. We have carefully read and maturely considered the earnest application for a rehearing of this cause made by defendant's counsel, in a petition and a supplemental petition.

As urged by him in the latter petition, we have no means of ascertaining the elements of damages considered by the jury and made the basis of their verdict. In appeals of this character the whole case in all its features is before us, and our conclusions are based on the result of our own examination of the pleadings and of the evidence, and in affirming the judgment in such cases, we are not held to the same reasons which may have actuated the jury in their finding. 33 An. 642, Vredenberg vs. Behan et al.

Defendant's main reliance is on the fact, as alleged by counsel, that

the issue of actual damages was not tried below and that the pleadings in the cause present exclusively the question of "punitory" or vindictive damages for the alleged tortious entry on, and occupancy of plaintiffs' lands by the Railroad Company. He concedes that the petition does contain averments of actual damages, such as injury to the drainage of plaintiffs, the obstruction of the flow of water from the river through a leading ditch to the sugarhouse pond, as a means of supplying the machinery, etc., but he contends that such damages are not alleged with sufficient clearness and precision, either as to the nature or the amount of the alleged damages. But we find that issue was joined by a general denial, on these allegations as well as on all the other averments of the petition, and it was therefore competent for plaintiffs to support these allegations by testimony which we find in the record, and which has led us to the conclusion that they had suffered damages in the amount which the jury had allowed.

Understanding that the amount recovered includes all damages incurred, which are continuous in their character, up to the date of the judgment, we see no reason to disturb our decree.

Rehearing refused.