(82 South. 79)

No. 22792.

HART v. CITY OF BATON ROUGE et al.

(Nov. 4, 1918.   On Rehearing, May 5, 1919.)

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Suit by Robert A. Hart against the City of Baton Rouge and others. From a judgment in favor of defendants, plaintiff appeals. Judgment set aside.

T. Jones Cross, of Baton Rouge, for appellant.

Laycock & Beale, of Baton Rouge, for appellees.

O'NIELL, J.   The plaintiff appeals from a judgment rejecting his demand and dismissing his suit for title and possession of a strip of land in use as a public street. There is a similar suit before us, entitled Henry F. Reymond v. City of Baton Rouge (No. 22793) 82 South. 75,[1] for an adjacent or contiguous strip of land, forming a continuation of the street. The city's defense is the same in both cases, and we have to refer to the other case for a complete statement of either of them.

The land sued for in both cases is claimed by the city to be the north end of St. Hypolite street; that is, that part of the street extending from Slocum alley due north to Boyd avenue. It has a width of 53⅓ feet between parallel lines, a length of 224 feet, and was at one time the western part (being all except 10⅔ feet of the width) of lots 5 and 16, in square 42, bounded on the north by Boyd avenue, and on the south by Slocum alley. The avenue and the alley run east and west, parallel with and several squares north from Convention street. St. Hypolite street, having a uniform width of 53½ feet, extends due north from Convention street to Boyd avenue.

[1] Ante, p. 162.

That was the lay of the land when these suits were filed. The question is whether St. Hypolite street should end at Slocum alley on the north, or extend across it, and through square 42, to Boyd avenue.

The plaintiff, Hart, claims that part of the land, now in St. Hypolite street, that was once the western part of lot 16, extending 106⅔ feet north from Slocum alley; and Henry F. Reymond claims the remaining 117⅓ feet in length, at one time the western part of lot 5, extending to Boyd avenue. Each of the plaintiffs claims under and by virtue of a tax title. The defendant, denying that either of the plaintiffs has a valid title, claims title for the city by possession and prescription of 30 years. The defendant admits that no deed or formal dedication of the land to the municipality can be found of record.

When that part of the city of Baton Rouge was laid off, far more than 30 years before the institution of these suits, St. Hypolite street extended from Convention street only to Slocum alley. Opposite the north end of St. Hypolite street, on the north side of Slocum alley, was lot 16, having a width of 64 feet between parallel lines extending from the alley north 106⅔ feet, to the rear boundary line of lot 5, which was described by a continuation of the side lines of lot 16 to Boyd avenue, a distance of 117⅓ feet.  The western boundary line of the two lots was a continuation of the west line of St. Hypolite street, and the eastern boundary line of the lots was located 10⅔ feet east from a continuation of the east line of St. Hypolite street.

There is no record of the ownership of lot 16 before the plaintiff bought it.  It was sold to him by the tax collector, on the 29th of July, 1892, for $9.74, taxes, interest, penalties, and costs, "due by owners unknown," for the years 1889, 1890, and 1891.

The earliest record of the ownership of lot 5 is that it was assessed to the estate of Mrs. Mary Carmena for taxes in 1865 and 1866.

Henry F. Reymond contends that it was forfeited to the state for nonpayment of the taxes of those years, although there is no record of a forfeiture. The lot was sold by the tax collector, at public auction, on the 30th of November, 1872, to Charles D. Favrot. It was sold by his widow and heirs to the Favrot Realty Company on the 5th of February, 1910, and by the latter to Henry F. Reymond on the 21st of August, 1916.

There was a residence on lot 16, that was destroyed by fire in 1862, 54 years before either of these suits was filed. Thereafter both lots remained open and were used as a public thoroughfare, though not improved or worked upon as a street by the municipal government before 1898. Charles D. Favrot had a fence built across lot 5 "some time in the eighties"; but, on the demand of the municipal council, he immediately had the fence taken down. He sold to the owner of the lot adjoining his on the east, on the 16th of September, 1891, a strip of land 10 feet wide, being the eastern part of lot 5, having the full depth of the lot, between parallel lines. The purchaser moved his western boundary fence to the line that formed a continuation of the east line of St. Hypolite street, thus taking in 8 inches more of width than his deed called for, and thus recognizing, we infer, that the remaining 53½ feet of width was a continuation of St. Hypolite street. Thereafter Robert A. Hart rented, and, in 1903, sold, to his neighbor on the eastern side of lot 16, a strip of land 10⅔ feet wide, being the eastern part of lot 16, having the full length of the lot, between parallel lines; and the purchaser moved his western boundary fence to the continuation of the line of St. Hypolite street, thus recognizing, we infer, that the remaining 53⅓ feet in width was a part of St. Hypolite street.

Robert A. Hart and another witness testified that there was a fence across the front of lot 16, on the north line of Slocum alley, in 1891 and 1892, and that the lot was then cultivated by some one as a garden. That testimony was contradicted by five witnesses who had lived in the neighborhood at the time and often used the thoroughfare through lots 5 and 16.

It does not appear that the municipal government took possession of the land in dispute, or did any work upon it, before the fence on the eastern boundary line of the two lots was moved to the line forming a continuation of the east line of St. Hypolite street, and that was less than 30 years before the institution of these suits. Our conclusion, however, is that the defendant's plea of prescription of 30 years is not necessary to the defense of this suit, and should not be considered a determining factor in the case. For, if we concede that the plaintiff had a valid title to the land at the time the municipal corporation took possession of it and appropriated it to a public purpose, by converting it into a street, at the expense of the municipality and to the knowledge of the owner of the land, the result is that the plaintiff has no right of action to recover the land itself, his only remedy being—if he has any cause of action—to demand adequate compensation for the taking of his land for a public purpose. It is not disputed that the municipal government took possession of the land in dispute and appropriated it to the public use as a continuation of St. Hypolite street, several years—at least ten years— before the institution of these suits to recover the land.

It is true that, just before the filing of this suit, the plaintiff protested when the city undertook to gravel the surface of the street, and there were negotiations looking to a sale of the land to the city. But the municipal government had already taken possession of the land, and had appropriated it to the public use as a continuation of St. Hypolite street. The city's water mains and sewer

mains from the municipal plant had been laid all the way through the continuation of St. Hypolite street, and were connected with the adjacent private property; sidewalks had been constructed on both sides of the street, all the way from Slocum alley to Boyd avenue; and that part of St. Hypolite street was then as freely and as generally used as a public thoroughfare as was any other part of the street. It is not disputed that the conspicuous work that was done by the municipality in the conversion of the land into a prominent street did not escape the attention of the plaintiff, who was then residing in the city. On the contrary, it appears that he sent a man to build a fence across the street; that the municipal authorities had the man arrested for his attempt at interference; and that the plaintiff did nothing more than to have the man released from custody. No further protest was made until the municipal government undertook to gravel the street, several years later. The plaintiff, or Henry F. Reymond, then instituted a possessory action, which was dismissed because the defendant had been in possession of the property longer than a year before the institution of the suit. Then this petitory action was filed.

One who permits his land to be taken and appropriated to a public purpose, by and at the expense of a corporation that has the power of expropriation or right of eminent domain, thereby waives the right he had to require the compensation guaranteed by the Constitution to be paid in advance. He thereby tacitly acknowledges that the land was subject to expropriation, and his only right or remedy then is to demand that adequate compensation be paid. To compel the corporation, that has incurred the expense of establishing public improvements upon the land, to incur the additional expense of removing the improvements and of replacing them after payment of adequate compensation for the land, would give the landowner the unfair advantage of being able to extort more than adequate compensation for his land. There is no reason why the principle stated should not be applied to a municipal corporation as well as to a railroad corporation, or any other corporation deriving its power of eminent domain under and by virtue of one and the same statute, without distinction in that respect. See Act No. 227 of 1902, p. 457, amending and re-enacting Act No. 117 of 1886, p. 215, amending and re-enacting section 1479 of the Revised Statutes of 1870. The doctrine is not a matter of statutory right, but rests upon the principle of estoppel. See Jefferson & Lake Pontchartrain Railroad Co. v. New Orleans, 31 La. Ann. 480; St. Julien v. Morgan's L. & T. Railroad Co., 35 La. Ann. 924; Lawrence v. T. & P. Railway Co., 39 La. Ann. 427, 2 South. 69, 4 Am. St. Rep. 265; Bourdier & Bellesein v. Morgan's L. & T. Railroad Co., 35 La. Ann. 947; Mitchell v. N. O. & N. E. Railroad Co., 41 La. Ann. 363, 6 South. 522; McCutchen v. T. & P. Railway Co., 118 La. 436, 43 South. 42; Taylor v. N. O. Terminal Co., 126 La. 420, 52 South. 562, 139 Am. St. Rep. 537; Moore Planting & Mfg. Co. v. Morgan's L. & T. Railroad Co., 126 La. 840, 53 South. 22; Webster S. G. & C. Co. v. V. S. & P. Railway Co., 129 La. 1096, 57 South. 529; Pons v. Y. & M. V. Railroad Co., 131 La. 313, 59 South. 721; Roussel v. Railways Realty Co., 133 La. 173, 62 South. 616.

It is not necessary to consider the pleas of prescription, or statutes of repose, invoked by the plaintiff in support of his tax title; or to consider his plea of estoppel, founded upon the fact that, in 1884 and again in 1910, the mayor approved an official map, in the making of which the engineer had followed the original survey of that part of the city, showing the land in contest as a part of lots 5 and 16. It may be assumed, for the purpose of this decision, that the plaintiff

owned the land in contest when the municipal corporation took possession of it and appropriated it to the public use as a street. Our conclusion is that the plaintiff had no right of action against the municipality when this suit was filed, unless it was for adequate compensation for the land that had been taken, and that question is not before us in this petitory action.

The judgment appealed from is affirmed, at the cost of the appellant.

LECHE, J., recused.

PROVOSTY, J., absent on account of illness, takes no part.

### On Rehearing.

PROVOSTY, J. The issues in this case are precisely the same as in the companion case Henry F. Reymond v. Same Defendant, 82 South. 75,[1] this day decided. For the reasons assigned in that case it is ordered, adjudged, and decreed that the judgment appealed from is set aside; and it is now ordered, adjudged and decreed that plaintiff, Robert A. Hart, have judgment against defendant the city of Baton Rouge recognizing him to be the owner of the following described property, to wit:

A certain lot of ground situated in that part of the city of Baton Rouge known as Spanish Town, and designated on the plan thereof according to the official map of the city of Baton Rouge as Lot No. 16 of Square No. 42, said property having been acquired by your petitioner on the 27th day of July, 1892, by act of record in book 15, folio 466, of the Conveyances of this Parish.

And it is further ordered, adjudged, and decreed that a writ of possession issue putting the plaintiff in possession of said property.

And it is further ordered, adjudged, and decreed that the plaintiff, Robert A. Hart,

---

[1] Ante, p. 162.

have judgment against the defendant the city of Baton Rouge condemning the said defendant to pay him rental value of the said property at the rate of $10 a month from the 1st day of March, 1917, until possession of said property shall have been delivered to said plaintiff.

And it is further ordered, adjudged, and decreed that the demand of the said plaintiff for attorney's fees be dismissed, and that the other demands of the said plaintiff for damages be dismissed as in case of nonsuit, and that the defendant city pay all costs.

O'NIELL, J., dissents, adhering to the opinion handed down originally.