154 So.2d 800 (1963)
Althimus SIGUE, Plaintiff and Appellant,
v.
TEXAS GAS TRANSMISSION CORPORATION, Defendant and Appellee.
No. 860.
Court of Appeal of Louisiana, Third Circuit.
June 18, 1963.
Rehearing Denied July 9, 1963.
*801 Simon & Trice, by J. Minos Simon, Lafayette, for plaintiff-appellant.
Shotwell & Brown, by Burt Sperry, Monroe, Landry, Watkins, Cousin & Bonin, by Jack Cousin, New Iberia, for defendant-appellee.
Before TATE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
The plaintiff landowner seeks an injunction against the continued occupation of his land by certain aboveground valves and connecting pipes constructed thereon by the defendant, Texas Gas Transmission Corporation. Plaintiff contends that the pipeline easement, which he granted to defendant, required that all pipelines, fittings and appliances be buried so that they would not interfere with cultivation of the land. On the other hand, it is the contention of defendant that said right of way agreement does permit the questioned aboveground installations as "necessary fittings and appliances" for the pipeline. In the alternative, defendant contends that the plaintiff knowingly acquiesced in the installation of said above ground installations and is therefore estopped to require the removal thereof and is relegated to a suit for compensation and damages. The district judge pretermitted the issue of whether the questioned installations were permitted by the right of way agreement and decided that, in any event, plaintiff was estopped to demand an injunction requiring their removal. Plaintiff appealed.
The facts show that plaintiff is the owner of a tract of land containing 64 arpents, more or less, used for agricultural purposes. In 1955, when defendant constructed its first pipeline across the property, it obtained from plaintiff a right of way agreement, with the provision that all pipelines would be buried beneath the surface of the land so as not to interfere with cultivation. Shortly after this 1955 agreement had been signed, the defendant obtained from plaintiff, for a consideration of $50, an additional easement covering a tract of land measuring 25' by 25' for the purpose of constructing an aboveground gate valve and appurtenances thereto, with the right to enclose this area by a fence.
On March 22, 1962, the defendant obtained from plaintiff a right of way agreement for a second pipeline, to be constructed parallel to the first. This agreement, like the first, granted defendant the right to construct a "pipeline (with necessary fittings and appliances) for the transportation of oil, gas, etc." The agreement also contained the provision that defendant "agrees to bury the pipeline so that it will not interfere with the cultivation of the land * * *." Then in either June or July of 1962 (defendant contends that it was during June but plaintiff testified it was during July) the defendant advised plaintiff that it would be necessary to construct an aboveground gate valve on the second pipeline, adjacent to that on the first pipeline. Plaintiff testified that during the month of July, 1962 he was approached by the agents of the defendant with the request that he sign an additional easement covering an area 25' by 25' for the aboveground gate valve. No agreement could be reached and plaintiff refused to sign this additional easement for the valve.
Defendant then, taking the position that it already had the right to construct the aboveground gate valve, under its existing pipeline right of way agreement dated *802 March 22, 1962, advised plaintiff on or about July 11, 1962 that the construction of the pipeline would begin within a few weeks. The evidence does not show that plaintiff was advised the aboveground gate valve would be constructed. Defendant's division manager, Mr. Taylor, testified that he instructed his land agents to tell the plaintiff they were going ahead with the construction of the pipeline and the aboveground valves. However, these land agents, who were the only ones who actually talked to plaintiff, would not say that they told plaintiff the aboveground valves would be constructed.
Actual construction began about August 1, 1962. Within a few days after the laying of the pipeline had started, plaintiff visited the property and saw the large holes which had been dug for the placement of the valves. Plaintiff testified that he immediately began to try to obtain an attorney to protect his rights as regards the installation of the aboveground gate valves without his consent and that he contacted four different lawyers but none of them would handle his case. Construction of the pipeline and the valve was completed about August 23, 1962. Plaintiff employed his present attorneys about September 10, 1962 and they entered into negotiations to obtain the removal of the aboveground valves or compensation and damages therefor. No agreement could be reached and this suit was filed on October 23, 1962.
Defendant's first contention is that under the right of way agreement, dated March 22, 1962, it was granted the right to construct a pipeline "with necessary fittings and appliances"; that its chief engineer testified the aboveground valve in question was a necessary fitting and appliance; that it therefore needed no additional easement for the gate valve.
We cannot agree with this contention. Such a construction of the contract in question would ignore the plain language contained therein that the defendant "agrees to bury all pipelines so that they will not interfere with the cultivation of the land. * * *" If it should be considered that there is anything doubtful about the language of the contract, then we think there is applicable here the rule of interpretation of agreements, set forth in LSA-Civil Code Art. 1949, that "it may be explained by referring to other contracts or agreements made on the same subject between the same parties, before or after the agreement in question." Under this rule, we think the fact that in 1955 defendant pipeline company did not rely on its original right of way agreement, as being sufficient to authorize the installation of the aboveground valves, but actually obtained from the plaintiff an additional easement for the valves, shows the intention and understanding of the parties. A further rule for the interpretation of agreements is LSA-Civil Code Article 1956 which states that "When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation." Furthermore, LSA-Civil Code Article 753 states that "Servitudes which tend to affect the free use of property, in case of doubt as to their extent or the manner of using them, are always interpreted in favor of the owner of the property to be affected." Also applicable here is the rule that in case of doubt contracts are construed against the party who wrote them. We have no difficulty in concluding here that the right of way agreement of March 22, 1962 did not permit defendant to construct the aboveground gate valve installations in question.
Defendant's next contention is that plaintiff knowingly stood by without complaint or filing suit and allowed the defendant to construct the aboveground valves in question; that plaintiff is by such acquiescence now estopped from asking for an injunction to remove the valves and is relegated to an action for compensation and damages. The general principle of law, on which defendant relies, is well established *803 in our jurisprudence as is shown by the cases it cites: St. Julien v. Morgan's Louisiana & T. Railroad Co., 35 La. Ann. 924; Bourdier and Bellesien v. Morgan's Louisiana & T. Railroad Co., 35 La. Ann. 947; Mitchell v. New Orleans & N. E. R. Co., 41 La.Ann. 363, 6 So. 522; Hart v. City of Baton Rouge et al., 145 La. 173, 82 So. 79; Cousin v. Hornsby et al., La.App., 87 So.2d 157. In the recent case of A. K. Roy, Inc. v. Board of Commissioners of Pontchartrain Levee District, 238 La. 926, 117 So.2d 60, the court stated this rule of law as follows:
"* * * [W]here a property owner, with full knowledge that its property has been taken possession of by a public body for the purpose of constructing public works, stands by without resistance or complaint, as was the case here, considerations of public policy require that the owner shall not be permitted to reclaim its property but shall be restricted to a claim for compensation for the value of the property taken and for damages to adjacent land, if any, determined as of the date of the taking." (Citations omitted)
We do not think this rule of law is applicable under the facts of this case. The plaintiff here did not acquiesce in the construction of the aboveground valves, but, on the contrary, expressly refused to grant defendant this right. Defendant was aware of this refusal and could not have reasonably believed that plaintiff acquiesced. In the case of Reymond v. City of Baton Rouge, 145 La. 162, 82 So. 75, the court, in a similar situation, stated "these facts show the very opposite of acquiescence. They show that the city was fully and thoroughly advised that the owners of record were claiming ownership and were opposing a taking, and that therefore, when the city took possession of this strip of land and incurred expenses upon it, she did so with her eyes wide open."
Furthermore, we do not think the plaintiff had full knowledge that defendant was taking possession of his property for the purpose of constructing the aboveground valves in question. Of course, plaintiff knew that defendant was going to enter upon his property for the purpose of constructing a pipeline, pursuant to the right of way which plaintiff had granted, but, as stated above, plaintiff did not know that the aboveground valves were going to be constructed until he visited the property a few days after construction had begun.
In its brief filed in this court, it appears defendant may be taking the position that plaintiff's failure to actually file a suit to enjoin construction of the valve, before construction commenced, created an estoppel. Although, as stated above, we do not think the evidence shows plaintiff had prior knowledge of defendant's intention to construct the valve, we believe that even if plaintiff had received such knowledge, he was not required to actually file a suit before construction began, in order to show lack of acquiescence on his part. As we understand the above cited cases, they do not go so far as to hold that a landowner is estopped, where he clearly makes known his protest and refusal of consent prior to construction of the public works. The cited cases do not hold that the landowner, in addition to expressly protesting or refusing to give his consent for the construction of the public works, must actually file a suit to enjoin their construction, or else thereafter be estopped from seeking their removal.
Plaintiff is entitled to an injunction ordering defendant to remove all of the aboveground valves, and other aboveground obstructions erected by defendant in 1962 upon plaintiff's land. Of course, defendant should be given a reasonable time, which we deem to be 90 days, within which to comply with such an order.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Althimus Sigue, and against the *804 defendant, Texas Gas Transmission Corporation, ordering defendant to remove all of the aboveground valves and other aboveground obstructions erected by defendant during the year 1962 upon the land of the plaintiff situated in Iberia Parish and described as follows:
A tract of land containing 64 arpents, more or less, situated in Section 26, Township 13 South, Range 7 East, and bounded by land owned now or formerly on the North by Joe Labiche Estate, on the East by public road and Joe Labiche Estate, on the South by Dolze Guillot, and on the West by public road and Joe Labiche Estate; save and except one acre in the North-east corner sold to Albert Guillory on April 24, 1950, by act recorded in Book 191, page 196.
It is further ordered, adjudged and decreed that defendant comply with this injunction within a period of 90 days after this judgment becomes final. All costs in the lower court, as well as the costs of this appeal, are assessed against the defendant appellee.
Reversed and rendered.

On Application for Rehearing.
En Banc. Rehearing denied.